SCHOTT, Judge,
dissenting in part:
I concur with the majority in affirming the judgment of the trial court on the main demand of Jackson Title Corporation and the judgment on the incidental demands to the extent of holding the notary and surety liable to appellant Swayne and exonerating from liability the assessor and the city notary. However, I dissent from the limitation of Swayne’s recovery to the amount of his purchase price.
Swayne’s cause of action against the notary is based simply on C.C.Art. 2315 which obliges the notary to repair the damage she caused Swayne by her fault in failing to order the proper research certificates when she passed the act of sale. Her negligence caused Swayne to lose the property. However, his loss occurred not in 1970 when the sale was passed, and not in November, 1971, when the property was sold for taxes to Jackson but three years after the recordation on February 18,1972, of the formal tax sale of the property to Jackson. Until the passage of that three years Swayne had an absolute right to redeem the property under Art. X, § 11, of the Louisiana Constitution of 1921, Art. VII, § 25, of the Louisiana Constitution of 1974; and R.S. 47:2221. Under basic tort recovery theory Swayne should be entitled at least to the value of the property as of the time he lost it on February 18, 1975, with the passage of the three year redemptive period.
However, Swayne’s loss was aggravated by the fact that the property continued to be assessed in his name and he continued to pay the tax bills which contained no reference to the tax sale, with the result that he continued to believe he was owner of the property until the present suit to confirm the tax title was filed in May, 1978. Only by then did Swayne learn that the property, in reality his investment, was lost because of the notary’s negligence.
I do not agree with the majority point of view that Swayne’s recovery should be limited to the purchase price of $5,000 rather than the $16,000 which the property was worth in May, 1978. While Swayne’s situation seems analogous to that of an evicted purchaser under C.C.Art. 2506 as discussed in Ralston Purina Co. v. Cone, 344 So.2d 95 (La.App. 2nd Cir. 1977) there is no basis for limiting the recovery of Swayne, the tort victim, as there may be for limiting the recovery of the evicted purchaser against the good faith seller.
Professor J. Denson Smith’s discussion in 17 La.L.R. 258 et seq. recognizes the difference between the recovery allowed buyer against a good faith seller as compared to a *695 bad faith seller, comparing C.C.Arts. 2452 and 2510; and his concern seems to be for the good faith seller when he states at page 266:
“.Yet it hardly seems reasonable to say that the parties contemplate, at the time of the sale, that the seller will stand good for any subsequent increase in value, no matter how great and no matter what period of time may elapse between the transfer of the property, and the day the seller is called upon to make good his warranty against eviction..."
However, our case is not concerned with a good faith seller’s liability, but that of a tort feasor who is obliged by C.C.Art. 2315 to repair the damage she caused. That damage was not simply Swayne’s loss of his purchase price (the quid pro quo for the property) but the loss of the property itself including its enhanced value at the time Swayne learned of the loss.
I would amend the judgment to award Swayne $16,000 with legal interest from date of judicial demand.